# JOHNSON & JOHNSON *v.* WHELAN.

---

### TRADEMARKS; PROOF OF USE.

1. To establish the right to a trademark, it is necessary to prove that it has been actually applied to the goods and used in trade, and the required particularity and certainty of such proof varies with the circumstances in each particular case. In some, greater particularity is required than in others.

2. Testimony by the president of a corporation, the junior party in a trademark interference case involving priority of use of a red Greek cross as a trademark for toilet powders, that for several years prior to the filing date of the senior party, who took no testimony, his company sold cans of toilet powder through the drug trade, labeled with the mark in question, is sufficient to show prior use, without evidence showing particular sales to named persons on specific dates, when supported by the testimony of a manufacturer of cans containing the mark, that they had manufactured and furnished to the junior party yearly thousands of the cans containing the labels during that period, and by proof that during such period the junior party printed a price list which displayed a can bearing the label and trademark.

No. 542.   Patent Appeals.   Submitted January 18, 1909.   Decided March 2, 1909.

HEARING on an appeal from a decision of the Commissioner of Patents in a trademark interference case.          *Reversed.*

The facts are stated in the opinion.

*Mr. Archibald Cox* and *Mr. Wm. G. Henderson* for the appellant.

*Messrs. Whitaker & Prevost* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an interference involving the right to use the representation of a red Greek cross as a trademark for toilet powder.

The mark was registered by Mary C. Whelan, February 21, 1899, under an application filed August 26, 1898. Johnson & Johnson, a corporation, filed application for registration October 17, 1905. Interference having been declared, testimony was taken by Johnson & Johnson, upon whom was cast the burden of proof of earlier adoption and use of the mark. None was taken by Whelan.

The Examiner of Interferences and the Commissioner concurred in holding that Johnson & Johnson's testimony was not sufficient to show prior adoption and use, and priority was awarded to Whelan.

We cannot agree with the Commissioner in regard to the sufficiency of the proof offered by Johnson & Johnson. There can be no possible doubt that Johnson & Johnson had ordered the construction of 10,000 cans for putting up toilet and baby powder, in October, 1894. These were manufactured by Somers Brothers, and delivered in December, 1894. These cans bore printed labels showing the character of the goods, the name of the manufacturer, and the red cross mark. Somers Brothers have been making the same cans for Johnson & Johnson continuously since. This testimony was given by Miller, the superintendent of Somers Brothers. Some slight changes have been made in the construction of the cans, and in certain words on the label, but the red cross mark has always been used. The witness also testified to seeing the same cans filled with baby powder at Johnson & Johnson's factory.

James W. Johnson testified for the appellants. He was interested in the partnership of Johnson & Johnson, which was merged in the corporation before 1890, and was vice president of the latter. He said that the corporation had been engaged in manufacturing the powder and putting it up in cans manufactured by Somers Brothers, since the latter part of 1894. The

cans produced by Miller are the same. When these were received from Somers Brothers, "we filled them with antiseptic toilet powder or baby powder and sold them to the drug trade or any other trade, for that matter, through our regular channels." That it had been sold "generally to wholesale and retail druggists throughout the United States and foreign countries.". He also produced a price list of the corporation, printed in the latter part of 1895, for the year 1896. On page 22 of the same is displayed a can, bearing the same label and trademark, that had been made by Somers Brothers. Previous price lists did not contain a similar cut or illustration. He said, further, that Johnson & Johnson had continued to sell toilet powder in similar cans since the time when such cans had been manufactured and delivered. Some invoices from Somers Brothers for the cans were produced by Johnson and offered in evidence. A question has been raised on their competency as evidence. We do not consider it necessary to consume time with a discussion of the point. They were excluded on the hearing below. Putting them aside altogether, the fact that the cans were made and delivered by Somers Brothers in 1894, and contained the trademark, is established by the direct testimony beyond question. The tribunals below were of the opinion that the testimony of Johnson as to the sale of the powder was too general and indefinite; and that he ought to have been able to and should have produced documentary evidence of particular sales to named persons, on specified dates.

To establish a right to a trademark it is necessary to show, to the reasonable satisfaction of the tribunal passing on the same, that it has been actually applied to the goods and used in trade. The required particularity and certainty of such proof varies with the circumstances of each particular case. In some, greater particularity and certainty is required than in others. Under the circumstances of this case, the general testimony, we think, was sufficient. It is to be remembered that 10,000 of the cans with this label had been furnished to the appellants in December, 1894, and some of them had been seen by a disinterested witness, filled with the toilet or baby powder.

Not only were these then furnished, but they had been continuously made and delivered to the appellants in quantities from that time down to the taking of the testimony. The price list of 1896, issued for the information of the trade, contained an illustration of the can and label. The appellants had no other use for the cans than as packages to contain powder for sale to the trade throughout the country. It is unreasonable to believe that they ordered 10,000 cans in 1894, and continued to order and pay for others without making sales of the article which they were intended to contain, in the meantime. While the continuous purchase of the cans from 1894 to the time of taking the testimony would not be sufficient, alone, to prove actual sales of the goods to the trade, it is so strong a circumstance that little additional proof is required. General and indefinite as the testimony of the witness is, we think it sufficient under all the circumstances.

We think there was error in refusing registration to the applicants, and that the decision should be reversed. It is so ordered, and that this decision be certified to the Commissioner of Patents, as the law requires.                          *Reversed.*